## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                              Case No. 23-42331

JOHN J. SCHLICHT                                    Chapter 13
and SHIRLEY M. SCHLICHT,
                                                    Judge Thomas J. Tucker
                    Debtors.
_____/

JOHN J. SCHLICHT, *et al.*,

                    Plaintiffs,

vs.                                                 Adv. No. 23-4180

UNION LAKE GOLF CLUB, L.L.C., *et al.*,

                    Defendants.
_____/

### OPINION REGARDING THE DEFENDANTS' MOTION TO DISMISS

## I. Introduction

This adversary proceeding requires the Court to decide whether two Chapter 13 debtors, who are tenants under a lease of real estate, can force the owner to sell the real estate, based on certain language in the lease. The answer is no.

This adversary proceeding is before the Court on the Defendants' motion entitled "Defendants' Motion to Dismiss Adversary Complaint Pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6)" (Docket # 8, the "Motion"). By an order entered on August 16, 2023 (Docket # 20), and for the reasons stated in that Order, the Court is treating the Motion as a motion for summary judgment under Fed. R. Civ. P. 56, which applies in this adversary proceeding under Fed. R. Bankr. P. 7056.

The Motion seeks dismissal of the Plaintiffs' complaint, and seeks sanctions against the Plaintiffs and their attorney for filing this adversary proceeding.

The Court held a telephonic hearing on the Motion on November 29, 2023, and took the Motion under advisement. For the following reasons, the Motion will be denied to the extent it seeks sanctions, but otherwise the Motion will be granted.

## II. Background

The three Plaintiffs in this adversary proceeding are two joint Chapter 13 debtors, John J. Schlicht and Shirley M. Schlicht (collectively, the "Schlichts"), and their wholly owned Michigan corporation, Maeleigh, Inc. ("Maeleigh"). The Schlichts filed their Chapter 13 bankruptcy case on March 16, 2023. They have not yet obtained confirmation of a Chapter 13 plan. Maeleigh is not in bankruptcy.

Together the three Plaintiffs operate a golf course, known as the Union Lake Golf Course, located at 8295 Wise Road, Commerce Township, Michigan (the address of which was formerly known as 2280 Union Lake Road). On May 3, 2023, the Plaintiffs filed their complaint in this adversary proceeding, stating three counts against the two Defendants. The Defendants are Union Lake Golf Club, LLC, a Michigan limited liability company ("Union Lake"), and James Galbraith, an agent of Union Lake.

In their complaint, the Plaintiffs alleged that jointly they are the vendees (purchasers), under a land contract for the purchase of the Union Lake Golf Course real estate (the "Golf Course Property"), from Defendant Union Lake, the alleged land contract vendor (seller). Plaintiffs alleged that their vendees' interest under the land contract gives them an equitable ownership interest in the Golf Course Property. The Plaintiffs also alleged that they have a lease

2

of the Golf Course Property with Defendant Union Lake, under which the Plaintiffs have a right to be paid "41% of the equity [in the Golf Course Property] minus the land contract balance and other costs upon the sale of the Golf Course."[1]

The Plaintiffs seek to force a sale of the Golf Course Property, but, they allege, the Defendants refuse to cooperate in such a sale.

The Plaintiffs' complaint alleged that as Chapter 13 debtors, the Schlichts may sell not only their interest in the Golf Course Property, but also the Defendants' interest(s) in that property, without the Defendants' consent, and free and clear of any interest the Defendants have in the Golf Course Property.[2] From such a sale, the Plaintiffs seek to be paid their alleged share of the net sale proceeds. To achieve this result, the Plaintiffs' complaint relies on 11 U.S.C. §§ 363(f) (Count 1); 363(h) (Count 2); and 363(j) (Count 3).

In their Motion, the Defendants contend, among other things, that: (1) Defendant James Galbraith is not a proper party because he has never owned any interest in the Golf Course Property, and has never been a party to any land contract or lease with the Plaintiffs; (2) Defendant Union Lake is the sole owner of the Golf Course Property; (3) the only land contract that Union Lake had with the Plaintiffs was terminated in 2013; (4) the lease between Union Lake, as landlord, and the Plaintiffs, as tenants, does not give the Plaintiffs any equitable interest in the Golf Course Property, and does not give the Plaintiffs any right to force a sale of the Golf Course Property; (5) only Union Lake can decide whether and when to sell the Gold Course Property; and (6) under the lease, the Plaintiffs currently have no right to any payment from a

---

[1] Compl. (Docket # 1) at ¶ 11.

[2] The Plaintiffs alleged that the non-debtor Plaintiff, Maeleigh, will consent to such a sale.

3

sale of the Golf Course Property, and any such right is still contingent, conditional, and limited.

## III. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). As to each of the three counts in Plaintiffs' complaint, this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(N), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11. *See* 28 U.S.C. § 1334(b). Matters within either of these categories are deemed to be core proceedings. *Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *id.*, including the provisions of 11 U.S.C. §§ 363(f), 363(h), and 363(j). This proceeding is one "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

For these reasons, this Court has statutory authority, under 28 U.S.C. § 157(b)(1), to enter a final judgment on all of Plaintiff's claims. If and to the extent this Court might otherwise lack *constitutional* authority to enter a final judgment, under *Stern v. Marshall*, 564 U.S. 462 (2011), such a problem does not exist in this case. This is because all of the parties have expressly, knowingly, and voluntarily consented to this bankruptcy court entering a final order or judgment, as permitted by 28 U.S.C. § 157(c)(2).[3] Given that consent, this bankruptcy court has both statutory and constitutional authority to enter a final judgment on all of the Plaintiffs' claims.

---

[3] *See* Report of Parties' Rule 26(f) Conference (Docket # 15) at 4 ¶ 3(g).

*See Ralph Roberts Realty, LLC v. Savoy* (*In re Ralph Roberts Realty*), 562 B.R. 144, 147-48

(Bankr. E.D. Mich. 2016) (discussing, among other cases, *Wellness Int'l Network, Ltd. v. Sharif*,

575 U.S. 665 (2015)); *Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376 (Bankr. E.D.

Mich. 2018); *Dery v. Karafa* (*In re Dearborn Bancorp, Inc.*), 583 B.R. 395, 400 (Bankr. E.D.

Mich. 2018).

## IV. Summary judgment standards

In considering whether summary judgment should be granted for the Defendants, the

Court has applied the standards governing motions for summary judgment under Fed. R. Civ. P.

56, which the Court now adopts and incorporates by reference from its prior opinion in the case

of *Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018).

Those standards include, among other things, the requirements that in deciding a summary

judgment motion, (a) the Court "'must afford all reasonable inferences, and construe the

evidence in the light most favorable to the nonmoving party[,]'" *Schubiner*, 590 B.R. at 376

(citation omitted); and (b) the Court "must 'believe the evidence of the nonmovant, and draw all

justifiable inferences in favor of the nonmovant.'" *Id.* at 377 (citations omitted).

## V. Facts

There is no genuine dispute regarding any of the following facts, all of which are

established by the undisputed evidence and admissions of the Plaintiffs.[4]

Defendant Union Lake is the sole owner of the Golf Course Property, and it has owned

---

[4] There are some disputes of fact in this case, based on the current record. But those disputes are not material.

5

the Golf Course Property since 1995.[5]  Defendant James Galbraith, at all relevant times, has been

an agent of Union Lake.  He has never had any ownership interest in the Golf Course Property.

Union Lake entered into a written land contract with the Plaintiffs, dated February 16,

2005 (referred to below as the "Land Contract" or the "2005 Land Contract"),[6] under which

Union Lake agreed to sell the Golf Course Property to the Plaintiffs for $350,000.00.  The

Plaintiffs made an initial payment of $40,000.00, and the Plaintiffs were to pay the remaining

$310,000.00, plus interest, in monthly installments followed by a balloon payment.  The monthly

installments were to begin on March 1, 2005, and the balloon payment of the balance owing on

the Land Contract was due on March 31, 2010.  The Land Contract also required the Plaintiffs to

pay all taxes, assessments, and insurance for the Golf Course Property during the term of the

Land Contract.  The Land Contract defined March 31, 2010 as the end of the term of the Land

Contract.  Upon the Plaintiffs' payment of all amounts due under the Land Contract by the March

31, 2010 deadline, Union Lake was to convey title to the Golf Course Property to the Plaintiffs.[7]

The Plaintiffs did not pay the balance owing under the Land Contract by the March 31,

2010 due date.  Instead, the parties executed an amendment extending the term of the Land

Contract.  That agreement, dated June 23, 2010, was entitled "First Amendment to Land

Contract" (the "First Amendment").[8]  The First Amendment extended the term of the Land

---

[5]  *See* Mot. Ex. 6-A (1995 Warranty Deed); Pls.' Br. (Docket # 14) at pdf p. 4.

[6]  A copy of the Land Contact, including its Addendum, is attached to the Motion as Exhibit 6-B (Docket # 8-6 at pdf pp. 5-13).  The Plaintiffs admit that this Exhibit 6-B states the terms of the parties' February 16, 2005 Land Contract.  *See* Pls.' Br. (Docket # 14) at pdf p. 5.

[7]  *See* Land Contract (Docket # 8-6) at pdf pp. 5, 11-13.

[8]  A copy of the First Amendment is attached to the Motion as Exhibit 6-D (Docket # 8-6 at pdf pp. 18-20).  The Plaintiffs admit that they executed the First Amendment on June 23, 2010.  *See* Pl.' Br.

6

Contract to March 31, 2013, and said that the Land Contract would "end" on that date. It required the Plaintiffs to pay the entire remaining balance owing on the Land Contract no later than March 31, 2013. And it also required the Plaintiffs to pay all real estate taxes owing on the Golf Course Property for the years 2008 forward.

Plaintiffs failed to pay the balance owing under the Land Contract by the March 31, 2013 deadline and termination date.[9] Instead, the Plaintiffs executed a quit claim deed dated March 15, 2013, "quitclaiming" all of the Plaintiffs' "right, title and interest in and to" the Golf Course Property to Union Lake.[10] The parties agree that this quit claim deed was not recorded.

The Plaintiffs and Union Lake also executed a written lease for the Golf Course Property, dated March 15, 2013 (referred to below as the "Lease" or the "Lease dated March 15, 2013").[11] Under the Lease, Union Lake leased the Golf Course Property to the Plaintiffs for a term beginning March 15, 2013 and ending on October 31, 2017. Among other things, the Lease required the Plaintiffs to pay annual rent of $12,000.00, in monthly installments of $2,000.00, payable by the first day of each of the six months of May through October of each year. The Lease also required the Plaintiffs to pay all expenses arising from their use and occupancy of the Golf Course Property, including insurance costs, utility costs, and maintenance and repair costs. The Plaintiffs have operated the Golf Course Property as a golf course during the term of the

---

(Docket # 14) at pdf p. 5.

[9] *Id*. at pdf p. 6.

[10] A copy of this quit claim deed is attached to the Motion as Exhibit 6-G (Docket # 8-6 at pdf p. 29). Plaintiffs admit executing this deed. *See* Pls.' Br. (Docket # 14) at pdf p. 6.

[11] A copy of the Lease is attached to the Motion as Exhibit 6-H. (Docket # 8-6 at pdf pp. 33-45). Plaintiffs admit executing the Lease. *See* Pls.' Br. (Docket # 14) at pdf p. 6.      L

Lease.

By agreement of the parties, the Lease was amended twice, first on September 25, 2017, and then again on June 18, 2019, each time to extend the term of the Lease. The second amendment extended the term of the Lease to an expiration date of October 31, 2024.[12] Thus, the Lease had not expired as of the date on which the Schlichts filed their Chapter 13 bankruptcy case on March 16, 2023.

## VI. Discussion

### A. The 2005 Land Contract was terminated in 2013.

Over the course of the briefing and oral argument on the Motion, the Plaintiffs' claims have evolved, and they are now narrower than what the Plaintiffs seemed to allege in their complaint. The complaint appeared to allege that the Plaintiffs currently have two types of interests in the Golf Course Property — first, as vendees under a land contract, and second, as tenants under a lease of the Golf Course Property. In Part V of this Opinion, the Court has described the 2005 Land Contract between the Plaintiffs and the Defendant Union Lake, as well as the Lease between these parties dated March 15, 2013. But now, it is clear that the Plaintiffs' claims are based entirely on the Lease, and specifically on paragraph 29 of the Lease.

Before discussing the Lease, the Court first will explain why the Plaintiffs have no valid claim based on the 2005 Land Contract.

By its own terms, the 2005 Land Contract, as extended by the First Amendment, terminated no later than March 31, 2013. And before that contract terminated, the Plaintiffs

---

[12] The two written amendments to the Lease are attached as Exhibits 1 and 2 to the Plaintiffs' response to the Motion (Docket # 14).

never became entitled to receive a deed to the Golf Course Property. That is because the Plaintiffs did not fully perform their obligations under the Land Contract, and failed to pay the balance owing on the Land Contract by the final due date of March 31, 2013. All of this is now undisputed.

The Plaintiffs have acknowledged that the 2005 Land Contract terminated, in at least three ways. First, the Plaintiffs admit that they executed the quit claim deed dated March 15, 2013, in which the Plaintiffs deeded to Defendant Union Lake all of their "right, title and interest in and to" the Golf Course Property. The fact that this quit claim deed was not recorded is immaterial. Even an unrecorded deed is effective as between the parties to it, under Michigan law. *See Gold v. Williams* (*In re Williams*), 649 B.R. 264, 287 (Bankr. E.D. Mich. 2023) (citing *Ligon v. City of Detroit*, 276 Mich. App. 120, 739 N.W.2d 900, 905 (2007)).[13] And in any event, the Plaintiffs' act of signing this quit claim deed was an implicit but clear acknowledgment that the Land Contract was terminated.

A second way in which the Plaintiffs acknowledged that the 2005 Land Contract was terminated is that they entered into the Lease dated March 15, 2013. That Lease, and its paragraph 29, are quoted and discussed in more detail below. In the opening sentence of paragraph 29, the Plaintiffs and Defendant Union Lake expressly stated that the 2005 Land

---

[13] In their briefing and during the hearing on the Motion, the Plaintiffs suggested that as Chapter 13 debtors, they may be able to avoid any transfer made by this quit claim deed, because the deed was not recorded, based on a combination of the so called "strong arm" provisions of 11 U.S.C. § 544(b) and Michigan law. But as the Plaintiffs admit, they have not pled any claim for such an avoidance. Nor is it clear that Plaintiffs could succeed in such an avoidance effort even if they amended their complaint to plead it. Defendants have argued substantial reasons why such an avoidance effort could not succeed. As it now turns out, however, that does not matter, because the Plaintiffs are no longer basing any of their claims on the 2005 Land Contract. Rather, the Plaintiffs now admit that the 2005 Land Contract terminated in 2013, and the Plaintiffs base their claims solely on the Lease dated March 15, 2013.

Contract had been terminated.

A third way in which the Plaintiffs have acknowledged that the 2005 Land Contract was terminated came during the hearing on the Motion. During the hearing, the Plaintiffs' attorney explicitly admitted that the 2005 Land Contract was terminated, and that Plaintiffs claims in this case now are based solely on paragraph 29 of the Lease dated March 15, 2013.[14]

---

[14] The oral argument by the Plaintiffs' counsel during the November 29, 2023 hearing included the following:

> [Plaintiffs' attorney]:
> Essentially . . . the case narrows down to [the] March 15, 2013 lease . . .
> [which was extended] . . . to . . . October 31, 2024, . . . . And inside that
> lease agreement . . . [appears] . . . ¶ 29. Regardless of whatever occurred
> before that it is apparent from that paragraph by mere recitations that it
> is really carrying over the interest of the land contract . . . .
> . . .
>
> [The Court]:
> . . . [Y]ou start out your argument, I think, by saying that the case
> narrows down to this March 2013 lease. And from reading the papers,
> including the response you filed, I take it that the Plaintiffs are not
> claiming . . . to have any rights . . . based on the 2005 land contract [or]
> the first amendment to the land contract. . . . They're not claiming they
> have any right in the real estate or any contractual rights or rights in the
> real estate based on the earlier land contract as amended and extended.
> That's basically gone, and what their claim is based on now is limited to
> paragraph 29 of the lease from 2013. Is that correct?
>
> [Plaintiffs' attorney]:
> That is correct . . . .
> . . .
>
> [The Court]:
> . . . [S]o whatever rights the Plaintiffs have they are limited to their
> rights under this 2013 lease, and specifically paragraph 29 of the lease.
> Is that right?
>
> [Plaintiffs' attorney]:
> That's correct, your Honor.

(Audio of November 29, 2023 hearing, posted at Docket # 35: 10:38 to 12:32; 27:20 to 28:30; and 29:29 to 29:43).

For these reasons, the Court concludes that the Plaintiffs have no valid claims based on the 2005 Land Contract. Any rights they may have had under that Land Contract were terminated in 2013.

**B. The March 15, 2013 Lease does not give the Plaintiffs any right to the relief they seek.**

Next, the Court will consider the only remaining basis for the Plaintiffs' claims — paragraph 29 of the Lease dated March 15, 2013.

In their brief opposing the Motion, the Plaintiffs characterized the Lease as a "land contract disguised as a purported lease."[15] And during the hearing on the Motion, Plaintiffs counsel argued, vaguely, that the Lease was partly a "carryover" of the Plaintiffs' former interests under the 2005 Land Contract, or at least some of those interests. These arguments are based entirely on paragraph 29 of the Lease. The Court disagrees with the Plaintiffs' position.

The Lease is *not* a land contract. This is clear from the way Michigan courts have defined the concept of a land contract:

> The term "land contract" is commonly used in Michigan as particularly referring to "agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." 1 Cameron, Michigan Real Property Law (2d ed.), § 16.1, p. 582. A land contract is therefore an executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract.

*Zurcher v. Herveat*, 605 N.W.2d 329, 341 (Mich. Ct. App. 2000); *see also* 1 Cameron, Michigan Real Property Law Principles and Commentary (3d ed.), § 16.1. Under a land contract, "[w]hen

---

[15] Pls.' Br. (Docket # 14) at pdf p. 6.

11

the vendee pays the purchase price, he or she is entitled to a conveyance of legal title." *Id.* at § 16.3 (citations omitted).

The Lease has none of the characteristics of a land contract. It is not a contract under which the owner, Union Lake, is selling the Golf Course Property to the Plaintiffs. And it does not obligate Union Lake ever to convey title to the Golf Course Property to Plaintiffs, or to anyone. Rather, it is simply a lease of the Golf Course Property, by Union Lake as landlord, to the Plaintiffs as tenants. Under the Lease, the Plaintiffs are given the right to occupy and use the Golf Course Property for a defined term, in exchange for their payment of rent and expenses arising from their use and occupancy, including insurance costs, utility costs, and maintenance and repair costs.

Plaintiffs rely entirely on paragraph 29 of the Lease, but that paragraph does not support Plaintiffs' position in this adversary proceeding.

The opening language of that paragraph makes clear that the 2005 Land Contract was terminated, and that in consideration for that termination, the Plaintiffs are given a carefully defined, ***conditional*** right to receive a payment of money, ***if*** the Landlord/owner, Union Lake, sells the Golf Course Property during the term of the Lease. Paragraph 29 states, in its entirety:

> (29) As consideration for the termination of that certain Land Contract (including Addendum thereto) dated February 16, 2005, as amended by First Amendment to Land Contract dated June 23, 2010 (as amended, the "**Land Contract**"), Landlord and Tenant hereby agree that if the [Golf Course Property] is sold by Landlord (whether the prospective buyer is produced by Landlord, Tenant or their respective agents) prior to the Expiration Date and Tenant is not in default under this Lease, then Tenant shall receive forty percent (40%) of the Net Sale Proceeds (as hereafter defined), less the Protective Advance (as hereafter defined).

12

The term "**Net Sale Proceeds**" means the purchase price for the [Golf Course Property], less:

(a)   The unpaid Land Contract balance at termination in the amount of $221,760.00; and

(b)   All transaction costs with respect to the sale, including without limitation, legal, survey, title insurance, transfer taxes, commissions, and other customary adjustments and prorations.

The term "**Protective Advances**" means all protective advances for real estate taxes made by Landlord (as seller) under the Land Contract in the amount of $28,838.19, plus reasonable attorneys fees incurred by Landlord (as seller) in connection with the enforcement of the Land Contract.

_For example_, if the [Golf Course Property] is sold for $500,000, then the net sale proceeds and participation would be as follows:

| | |
|---|---|
| Sales Price: | $500,000.00 |
| Less Land Contract Balance: | $221,760.00 |
| Less Transactional Costs (Estimated): | $ 50,000.00 |
| Net Sale Proceeds: | $228,240.00 |
| Participation of 40%: | $ 91,296.00 |
| Less Protective Advances (Estimated): | $ 28,838.19 |
| Tenant's Share: | $ 62,457.81 |

Tenant hereby agrees that at any time during the term of this Lease, but upon reasonable prior notice to Tenant, Tenant will permit Landlord to show the [Golf Course Property] for sale and to make the [Golf Course Property] available for inspections, studies, and tests; provided, however, that all showings, inspections, studies, and tests shall not unreasonably interfere with Tenant's use of the [Golf Course Property].  The foregoing contemplates Tenant's total cooperation as and to the extent Landlord shall deem necessary and/or desirable to facilitate the sale of the [Golf Course Property].

13

> Anything contained herein to the contrary notwithstanding, upon the sale of the [Golf Course Property] prior to the Expiration Date, Landlord shall have the option, by written notice to Tenant, to terminate this Lease at either (i) the end of the then current golfing season, or (ii) a date mutually agreed upon by Landlord and Tenant (the "**Early Termination Date**"). On or before the Early Termination Date, Tenant shall vacate the [Golf Course Property] and deliver up the [Golf Course Property] in the condition required under Paragraph 12, above, whereupon all rent previously paid by Tenant shall be forfeited, and neither party hereto shall have any further liability or obligation under this Lease other than the obligations hereunder which survive the expiration and/or termination of this Lease. Tenant agrees to execute and deliver all additional documents which may be reasonably requested by Landlord in order to effectuate the purpose of this paragraph.[16]

Based on the unambiguous language of this paragraph 29, the Court draws the following conclusions.

First, paragraph 29 gives the Plaintiffs, at most, merely a right to a payment of money, under the specific conditions, and in the limited amount, defined in this paragraph.

Second, paragraph 29 does not give the Plaintiffs any interest in the Golf Course Property itself — *i.e.*, in the real estate itself. It does not give the Plaintiffs any equitable interest in the real estate, for example, like the equitable interest in the real estate that the Plaintiffs previously had as land contract vendees under the 2005 Land Contract.[17] Under Michigan law, for example, even a person holding an option to purchase land does not have any legal or equitable interest in the land. *See Stenke v. Masland Dev. Co., Inc.*, 394 N.W.2d 418, 422-23 (Mich. Ct. App.

---

[16] Lease at ¶ 29 (Docket # 8-6 at pdf pp. 41-43) (bold, italics, and underlining in original).

[17] Plaintiffs argue that because paragraph 29 makes certain references to the 2005 Land Contract, that paragraph in the Lease somehow carried forward, at least in part, the interest that the Plaintiffs had in the Golf Course Property *as land contract vendees under the terminated 2005 Land Contract*. But unambiguously, paragraph 29 of the Lease has no such meaning or effect, expressed or implied.

14

1986).[18]  The Plaintiffs have cited no authority showing that under Michigan law, their status as tenants under a lease of real estate gives them any legal or equitable interest in the real estate itself.

Third, paragraph 29 does not give the Plaintiffs any right to sell the Golf Course Property itself.  Nor does it give the Plaintiffs any right to force the Landlord/owner Union Lake to sell the Golf Course Property.[19]  Rather, this paragraph does not limit or alter in any way the exclusive rights of the Landlord/owner, Union Lake, as the sole owner of the Golf Course Property, to decide whether to sell that real estate, when to sell it, who to sell it to, and on what terms to sell it.[20]

---

[18]  In *Stenke,* the Michigan Court of Appeals held that

> the holder of an option to purchase land does not have an interest in the premises, either legal or equitable.  *Oshtemo Twp. v. Kalamazoo,* 77 Mich. App. 33, 257 N.W.2d 260 (1977), *lv. den.* 402 Mich. 814 (1977). . . . In *Windiate v. Leland,* 246 Mich. 659, 665, 225 N.W. 620 (1929), the Supreme Court quoted with approval the following language from *Keogh v. Peck,* 316 Ill. 318, 147 N.E. 266, 38 A.L.R. 1151 (1925):
>
> > An option to purchase does not create estate in land.  No title, legal or equitable, is granted to the holder of the option by an option agreement. . . .
>
> . . . [This rule] remains current law.  *Oshtemo Twp. v. Kalamazoo, supra.*

394 N.W.2d at 422-23 (internal quotation marks omitted).

[19]  Plaintiffs argue that their conditional contractual right to payment of part of the proceeds from a sale of the Golf Course Property inherently gives them a right to sell the Golf Course Property.  *See* Pls.' Br. (Docket # 14) at pdf pp. 10-11.  But that argument is simply incorrect.  Plaintiffs cite no authority to support that argument, and there is nothing in paragraph 29 of the Lease that expressly or impliedly gives Plaintiffs any right to sell the Golf Course Property, or to force Defendant Union Lake to sell that property.

[20]  Plaintiffs argue that to the extent that under paragraph 29 of the Lease, only Union Lake, the landlord/owner, has a right to sell the Golf Course Property, and that the Plaintiffs do not have such a right, and do not have a right to force the sale of the Golf Course Property, paragraph 29 is unenforceable

15

Fourth, under Paragraph 29, the Plaintiffs' right to a payment of money is contingent and limited. The Plaintiffs have no right to any payment at all, unless ***all*** of the following requirements are met:

- the Golf Course Property is sold by the Landlord/owner, Union Lake ("if the [Golf Course Property] is sold by Landlord");

- the sale occurs before the end of the Lease term (currently, October 31, 2024) ("if the [Golf Course Property] is sold . . . prior to the Expiration Date") (paragraph 2 of the Lease defines the end of the Lease term as the "**Expiration Date**") (bold in original);

- the Plaintiffs are "not in default under [the] Lease;" and

- application of the detailed formula for calculating the Plaintiffs' share from the sale proceeds actually yields a positive dollar amount.

Fifth, under the formula for calculating the Plaintiffs' share from a sale of the Golf Course Property that otherwise meets all the requirements listed above, the amount of the payment to the Plaintiffs depends on a number of variables, some of which are not yet known. It is theoretically possible that the formula could yield a zero-payment result for the Plaintiffs. These as-yet unknown variables for any hypothetical future sale include the amount of the sale price; the amount of the "transaction costs with respect to the sale;" and the full amount of the "Protective Advances" (defined in Paragraph 29 as $28,838.19, ***plus*** certain reasonable attorney fees incurred by Landlord, the amount of which are not quantified in paragraph 29 or elsewhere

---

under Michigan law, as an illegal restraint on alienation. Plaintiffs argue that this is an illegal restraint on their rights to sell the Golf Course Property, or to force the sale of the property. But during the hearing, when the Court asked Plaintiffs' counsel what was the ***source*** of the Plaintiffs' rights to sell the Golf Course Property or force the sale of that property, Plaintiffs' counsel answered only that paragraph 29 of the Lease itself was that source.

Plaintiffs' argument is without merit. As the Court holds above, Paragraph 29, unambiguously, does ***not*** give the Plaintiffs any right to sell the Golf Course Property or to force the Defendant Union Lake to sell that property. So the Plaintiffs do not have any right of alienation that is being restrained.

in the Lease).

Thus, under the unambiguous contract language, it is possible that the Plaintiffs never actually will be entitled to receive any payment under paragraph 29 of the Lease. For example, if Defendant Union Lake chooses not to sell the Golf Course Property before the term of the Lease ends, the Plaintiffs will not be entitled to any payment under paragraph 29. Or if Union Lake tries to sell the Golf Course Property, but is unable to find a buyer before the end of the Lease term, the Plaintiffs will not be entitled to any payment. Or if Union Lake chooses to sell the Golf Course Property during the Lease term for a sale price that is insufficient to yield any payment to the Plaintiffs under the formula in paragraph 29, then the Plaintiffs will not be entitled to any payment. Under these and certain other possible scenarios, paragraph 29 of the Lease would yield the Plaintiffs no payment. But at the same time, there also are possible scenarios under which paragraph 29 could end up giving the Plaintiffs the right to a substantial payment.

In any event, whether paragraph 29 of the Lease is a good deal or a bad deal for the Plaintiffs, it is the deal they struck with Defendant Union Lake when they entered into the Lease on March 15, 2013. Under Michigan law, the unambiguous language of the Lease and its paragraph 29 must be enforced as written. *See Vining v. Comerica Bank* (*In re M.T.G., Inc.*), 646 B.R. 1, 71 (Bankr. E.D. Mich. 2022) (citing *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007) (quoting *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003)); *Reicher v. SET Enters., Inc.*, 770 N.W.2d 902, 907 (Mich. Ct. App. 2009) (citations omitted).

For these reasons, the Plaintiffs are not entitled to any of the relief they seek, based on paragraph 29 of the Lease or any other provision of the Lease, or based on the terminated 2005

17

Land Contract, or based on Michigan law.

**C. The Bankruptcy Code does not give the Plaintiffs the right to any of the relief they seek.**

There is no provision in the Bankruptcy Code that enables the Plaintiffs to obtain the relief they seek. The Plaintiffs rely on 11 U.S.C. §§ 363(f) and 363(h), but those provisions do not enable the Plaintiffs to sell, or force the sale of, the Golf Course Property.

Two of the three Plaintiffs, the Schlichts, are joint debtors in the Chapter 13 bankruptcy case. When they filed bankruptcy, they were co-tenants, with the other Plaintiff, Maeligh, under the unexpired March 15, 2013 Lease. As Chapter 13 debtors, the Schlichts came into bankruptcy with a possible right to assume the Lease, under Bankruptcy Code § 365(a), and once the Lease was assumed, a right to assign (sell) their rights under the assumed Lease to a third party, under Bankruptcy Code § 365(f). *See* 11 U.S.C. §§ 365(a), 365(f).[21] Under these Bankruptcy Code

---

[21] Section 365(a) states:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a). Section 365(f) states, in part:

> (f) (1) Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
>
> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in

18

sections, the Schlichts' exercise of these possible rights to assume and assign the Lease was subject to several requirements, including approval by this Court.

As Chapter 13 debtors, the Schlichts had the right to propose the assumption and an assignment of the Lease as part of their proposed Chapter 13 plan, under Bankruptcy Code § 1322(b)(7). That section states that a Chapter 13 plan may, "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section[.]" 11 U.S.C. § 1322(b)(7).

The Schlichts filed a proposed plan in their Chapter 13 case on March 28, 2023, in which they proposed to assume the Lease,[22] but that plan does not propose to assign the Lease to anyone. In any event, that plan has not yet been confirmed. To date, no plan has been confirmed.

But the assumption and/or assignment of the March 15, 2013 Lease is not what the Plaintiffs seek in this adversary proceeding. Here, the Plaintiffs seek an order authorizing them, under Bankruptcy Code §§ 363(f) and 363(h), to sell the Golf Course Property itself, free and clear of any interest of the owner, Union Lake, and to distribute the proceeds of that real estate sale under Bankruptcy Code § 363(j). The Plaintiffs have no right to any such relief.

These Bankruptcy Code provisions do not give any of the Plaintiffs a right to sell, or

---

such contract or lease.

11 U.S.C. § 365(f).

[22] *See* "Chapter 13 Plan" (Docket # 14 in Case No. 23-42331) at p. 5 (under "**CLASS SIX - EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES**. 11 U.S.C. §§ 365, 1322(b)(7)"[.] (bold and capitalization in original). The plan also proposed to assume the Land Contract, *id.*, but that is not possible. As discussed in Part VI.A of this Opinion, the 2005 Land Contract terminated in 2013. So the Schlichts have no land contract to assume or assign.

force the sale of, the Golf Course Property. Section 363(f) only authorizes "[t]he trustee"[23] to sell property of the bankruptcy estate; it does not authorize the trustee (or any Chapter 13 debtor) to sell property that is ***not*** property of the bankruptcy estate. This is clear from the language in § 363(f), which authorizes only the sale of "property under subsections (b) or (c) of this section." Sections 363(b) and 363(c), in turn, only authorize the use, sale, or lease of "property of the estate." These provisions in § 363 state, in relevant part:

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, **property of the estate**, . . . .
> . . .
>
> (c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including **the sale or lease of property of the estate**, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
> . . .
>
> (f) The trustee may sell property **under subsection (b) or (c) of this section** free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or

---

[23] As Chapter 13 debtors, the Schlichts, rather than the Chapter 13 trustee, generally have the rights of a trustee under § 363(b) and 363(f), among other § 363 subsections. *See* 11 U.S.C. §1303.

(5) such entity could be compelled, in a legal or equitable
proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363 (emphasis added).

The Golf Course Property is not property of the bankruptcy estate in the Schlichts'

Chapter 13 case, because when they filed their Chapter 13 petition, and at all times thereafter,

they had no ownership interest in the Golf Course Property (*i.e.*, the real estate itself).  The only

interest that the Schlichts had, as of the bankruptcy petition date and thereafter, was as tenants

under the Lease.  Their rights under the Lease became property of the bankruptcy estate when

they filed bankruptcy.  *See generally* 11 U.S.C. §§ 541(a)(1), 1306(a).  At most, the Schlichts had

a right to seek to sell their rights ***under the Lease***, by means of the assumption and assignment

provisions in Bankruptcy Code §§ 365(a), 365(f), and 1322(b)(7), discussed above.

For these reasons, the Plaintiffs are not entitled to any of the relief they seek based on

§ 363(f).[24]

The same is true under § 363(h), for similar reasons, and for additional reasons.  First and

foremost, when § 363(h) applies, it authorizes only the sale of "the estate's interest, under

subsection (b) or (c) of this section, and the interest of any co-owner in property[.]"  Section

363(h) does not authorize the sale of property that is not property of the bankruptcy estate.

Section 363(h) states:

> (h) Notwithstanding subsection (f) of this section, **the trustee may
> sell both the estate's interest, under subsection (b) or (c) of this
> section, and the interest of any co-owner in property** in which
> the debtor had, at the time of the commencement of the case, an
> undivided interest as a tenant in common, joint tenant, or tenant by

---

[24]  And § 363(f) does not authorize the Plaintiff Maeleigh to sell the Golf Course Property for the
additional reason that Maeleigh is not a debtor in bankruptcy.

the entirety, only if—

    (1) partition in kind of such property among the estate and such co-owners is impracticable;

    (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

    (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

    (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h) (emphasis added).

Under § 363(h), the Schlichts cannot sell, or force the sale of, the Golf Course Property, because that property is not property of the bankruptcy estate.

There is at least one additional reason why the Schlichts cannot get the relief they seek under § 363(h). Even if the Schlicts' interest as tenants under the Lease could be characterized as an "interest" in the Golf Course Property itself (which the Court holds it cannot be), so that such "interest" became property of the bankruptcy estate when the Schlichts filed bankruptcy, § 363(h) would not apply. This is because the bankruptcy estate's interest in that property could not be considered to be co-owned by the estate with the Defendant Union Lake, as "an undivided interest as a tenant in common, joint tenant, or tenant by the entirety," as required by § 363(h). The Schlichts' interest, as tenants under the Lease, is not co-owned with the landlord and owner, Union Lake. Union Lake owns no interest as a tenant under the Lease. Union Lake is the landlord, not a tenant. Nor do the Schlichts, on the one hand, and Union Lake, on the other hand,

share an undivided interest with each other as "tenant[s] in common, joint tenant[s], or tenant[s] by the entirety," as required by § 363(h). The only party that owns the Golf Course Property is Defendant Union Lake. It does not "co-own" that property with the Schlichts or their bankruptcy estate at all, let alone in "an undivided interest as a tenant in common, joint tenant, or tenant by the entirety."

For these reasons,[25] § 363(h) does not permit the Plaintiffs to obtain any of the relief they seek.[26]

For the reasons stated above, the Court must grant summary judgment for the Defendants, on all three counts of the Plaintiffs' complaint.[27]

## D. The Court will deny the Plaintiffs leave to amend their complaint, because amendment would be futile.

---

[25] In addition, the Schlichts may be unable to sell, or force the sale of, *any* property under § 363(h). While Bankruptcy Code § 1303 gives the Schlichts, as Chapter 13 debtors, the "rights and powers of a trustee" under certain subsections of § 363, including § 363(f), those subsections do *not* include § 363(h). Section 1303 states:

> Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title.

11 U.S.C. § 1303. The omission of § 363(h) in § 1303 may mean that the Schlichts cannot obtain any relief under § 363(h). The parties have not briefed this issue, and there is a split of authority on it. *Compare Andrade v. Essenfeld* (*In re Andrade*), 570 B.R. 121, 122 (Bankr. D. Mass. 2017) (collecting cases, and holding that Chapter 13 debtors may not use § 363(h)) and *Wrublik v. Wrublik* (*In re Wrublik*), 312 B.R. 284, 286-87 (Bankr. D. Md. 2004) (same) *with In re Guy*, 587 B.R. 475, 480 (Bankr. E.D. N.C. 2018) (Chapter 13 debtors may use § 363(h)).

In this case, the Court does not need to decide whether a Chapter 13 debtor may seek relief under § 363(h), because the Schlichts cannot use § 363(h) for the other reasons stated in this Opinion.

[26] And § 363(h) does not authorize the Plaintiff Maeleigh to sell the Golf Course Property for the additional reason that Maeleigh is not a debtor in bankruptcy.

[27] Counts 1 and 2 of the complaint seek relief based on §§ 363(f) and 363(h), respectively. Count 3, which is based on § 363(j), necessarily fails because the Plaintiffs' claim under § 363(h) fails.

The Court also will deny the Plaintiffs leave to amend their complaint, to add any claim seeking avoidance of any transfer made by the unrecorded March 15, 2013 quit claim deed. Such a newly-pled claim would be futile, for the reasons stated in footnote 13 of this Opinion, above. Avoidance of any such transfer still would leave Defendant Union Lake as the sole owner of the Golf Course Property, and would not resurrect the terminated 2005 Land Contract.

**E. Defendant James Galbreath is not a proper defendant in this case in any event.**

It is now undisputed that Defendant James Galbreath never has had any ownership interest, or any legal or equitable interest, in the Golf Course Property. It also is undisputed that James Galbreath was not a party to the March 15, 2013 Lease, or, for that matter, to the terminated 2005 Land Contract. As a result, there is no valid basis for James Galbreath to be a named defendant in this adversary proceeding. He is entitled to summary judgment in his favor for this reason, in addition to the reasons that entitle the Defendant Union Lake to summary judgment.

**F. The Court will deny the Defendants' request for sanctions under Fed. R. Bankr. P. 9011.**

In their Motion, the Defendants seek not only the dismissal of this adversary proceeding, but also sanctions against the Plaintiffs and their attorney, under Fed. R. Bankr. P. 9011. The Court will deny that request, however, for each of the following reasons. First, the Plaintiffs failed to seek Rule 9011 sanctions in a separate motion from their motion to dismiss, as required by Rule 9011(c)(1)(A). Second, the Defendants failed to serve their request for sanctions on the Plaintiffs at least 21 days before filing that request (as part of the Motion seeking dismissal), as

24

required by Rule 9011(c)(1)(A).[28]  Third, under the circumstances of this very unusual case, the Court does not find that the Plaintiffs' claims were frivolous, or that the Plaintiffs or their attorney otherwise violated Rule 9011(b).

## VII. Conclusion

For the reasons stated in this Opinion, the Court will enter an order granting summary judgment for the Defendants on all three counts of the Plaintiffs' complaint; denying the Plaintiffs leave to amend their complaint; and denying the Defendants' request for sanctions under Fed. R. Bankr. P. 9011.

---

[28]  Rule 9011(c)(1) provides, in pertinent part:

**(c) Sanctions**

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

**(1) How Initiated**

**(A) By Motion**

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). . . .

Fed. R. Bankr. P. 9011(c)(1).

**Signed on December 21, 2023**



/s/ Thomas J. Tucker
_____
Thomas J. Tucker
United States Bankruptcy Judge